**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JONATHAN AYALA,

Plaintiff,

v.

Case No. 24-CV-110-MV

WEXFORD HEALTH SOURCES, INC. et al.,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Wexford Health Sources, Inc.'s Opposed Motion to Dismiss Based on the Statute of Limitations [Doc. 21] and NMCD Defendants' Motion to Dismiss Based on the Statute of Limitations and Supporting Memorandum [Doc. 40]. Having considered the briefing and relevant law, and being otherwise fully informed, the Court finds that the Motions are not well-taken and will be denied.

## BACKGROUND

### I. Factual Allegations[1]

Plaintiff Jonathan Ayala alleges that he was subjected to constitutionally inadequate healthcare while incarcerated at the Guadalupe County Correctional Facility ("GCCF"). Doc. 1 ¶ 8. Wexford Health Sources, Inc. ("Wexford") was contracted by the New Mexico Corrections Department ("NMCD") to provide medical care to inmates at the facility. *Id.* ¶ 9. Prior to the treatment at issue, Wexford and NMCD staff were aware of Mr. Ayala's history of intravenous drug use, which made him susceptible to infections such as endocarditis. *Id.* ¶ 24.

[1] In resolving Rule 12(b)(6) motions, the Court "take(s) Plaintiff's well-pleaded facts as true, view[s] them in the light most favorable to Plaintiff, and draw[s] all reasonable inferences from the facts in favor of Plaintiff." *Brooks v. Mentor Worldwide* LLC, 985 F.3d 1272, 1281 (10th Cir. 2021).

Mr. Ayala first sought medical attention on January 26, 2021, when he reported that he had suffered from a fever, inability to eat, and vomiting during the preceding three days. *Id.* ¶ 25. He also explained that he had used Suboxone two days prior and developed hives the day prior. *Id.* Wexford medical staff provided him with acetaminophen and anti-nausea medication. *Id.* ¶ 26.

Mr. Ayala's condition deteriorated over the following week. On January 27, he was unable to urinate, diagnosed with viral and urinary tract infections, and prescribed more acetaminophen and anti-nausea medication, alongside Benadryl and Bactrim (an antibiotic). *Id.* ¶ 27. On January 28, he complained of body aches, continued nausea, and headaches, and medical staff started to administer the antibiotic prescribed earlier. *Id.* ¶ 28. On January 31, he could no longer walk and was in a wheelchair, and reported diarrhea, vomiting, spinal pain, and shortness of breath. *Id.* ¶ 30. On February 1, he was documented with a neck infection, tachycardia, acute hepatitis, and an abnormal EKG. *Id.* ¶ 31. Besides prescribing a different antibiotic, more acetaminophen, and Clonidine for his blood pressure, medical staff stayed the course of treatment. *Id.* On February 2, he was wheeled into the medical unit and reiterated his extreme pain; staff gave him Tylenol. *Id.* ¶ 32. During this period, Mr. Ayala was never evaluated by a physician. *Id.* ¶ 35.

Wexford oversaw Mr. Ayala's care until February 3, 2021. Around 4:30 a.m., he reported a persistent fever and pain in his upper legs. *Id.* ¶ 33. Wexford medical staff misdiagnosed him with a "drug induced fever," instructed him to consume more electrolytes, and prescribed him an antacid and aspirin. *Id.* Later that day, he finally saw a doctor, who immediately transferred him to the Guadalupe County Hospital emergency room. *Id.* ¶ 34. Upon his arrival around 3:30 p.m., hospital staff quickly suspected endocarditis and diagnosed him with multiorgan failure, including acute heart and renal failure. *Id.* ¶¶ 43–45. That evening, around 8:30 p.m., he was emergency airlifted to the University of New Mexico Hospital. *Id.* ¶ 46. The cardiology and nephrology

specialists there confirmed the earlier diagnoses and additionally diagnosed him with septic emboli of the lung around 11:00 p.m. *Id.* ¶ 47. On February 5, 2021, hospital staff confirmed that he was suffering from severe, life-threatening sepsis. *Id.* ¶ 48. Mr. Ayala remained in the hospital for seventy days, until April 13, 2021, during which time he underwent cardiothoracic surgery and several other lifesaving procedures. *Id.* ¶ 49.

## II. Procedural History

Mr. Ayala filed his Complaint on February 4, 2024, raising two claims for relief under 42 U.S.C. § 1983. Doc. 1. First, he raises an Eighth Amendment claim for deliberate indifference to his medical needs against Wexford, eight Wexford employees in their individual capacities (Michael Hildenbrandt, Tommie Salinas, Dr. Murray Young, Kathy Armijo, James Gonzales, Arturo Leon, Sarah Cartwright, and Lynnsey Vigil), and three NMCD administrators in their individual capacities (Alisha Tafoya Lucero, David Selvage, and Orion Stradford; collectively, "NMCD Defendants"). *Id.* ¶¶ 122–29. Second, he raises an Eighth Amendment claim for a policy and practice of deliberate indifference against Wexford. *Id.* ¶ 130–43.

Wexford filed a Rule 12(b)(6) Motion on statute-of-limitations grounds. Doc. 21 at 1–2, 5–6. Initially, Wexford sought dismissal of the entire Complaint as barred by New Mexico's three-year statute of limitations, contending that any constitutional violations concluded upon Mr. Ayala's February 3, 2021, hospital transfer, which occurred more than three calendar years before his February 4, 2024, filing date. *Id.* at 4, 6–7. After Mr. Ayala's Response pointed out that February 3, 2024, fell on a Saturday, thereby extending the deadline to Monday, February 5, 2024, Wexford's Reply conceded the timeliness of all claims arising out of conduct on February 3, 2021. Doc. 23 at 2–5; Doc. 26 at 1–2. However, arguing that each day of alleged medical neglect constitutes a separate accruing injury, Wexford still asks the Court to dismiss all claims predicated

on conduct between January 26, 2021, and February 2, 2021. Doc. 26 at 2–4. Kathy Armijo, one of the named Wexford employees, later joined Wexford's Motion and Reply. Doc. 39.

NMCD Defendants later filed a Rule 12(b)(6) Motion on the same grounds. Doc. 40. Unlike Wexford, NMCD Defendants maintain that all claims against them are time-barred, asserting that no constitutional violation occurred on February 3, 2021, and that no claims accrued later than February 2, 2021, by which time Mr. Ayala was purportedly aware that he was receiving inadequate treatment. Doc. 40 at 1–2, 6; Doc. 42 at 1–2, 5. Mr. Ayala contends that he was subjected to unconstitutional care on February 3, and that his entire claim accrued on that date under the continuing violations doctrine. Doc. 41 at 4–8.

## STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At this early stage, "[t]here is no fact-finding, as we accept [the plaintiff's] well-pleaded factual allegations as true after setting aside mere legal conclusions. And the plaintiff receives the benefit of the doubt: we view the facts in the light most favorable to the plaintiff and draw all reasonable inferences in [their] favor." *Vasquez-Garcia v. Centurion, LLC*, 172 F.4th 1150, 1157 (10th Cir. 2026). "Together, these principles erect a relatively high bar for a Rule 12(b)(6) dismissal that leaves room for the district court to decide only one, largely legal question: whether the facts alleged, taken as true, plausibly state a claim upon which relief can be granted." *Id.* A claim has "facial plausibility," which is simply "more than a sheer possibility," so long as the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[I]t is the defendant's burden to plead an affirmative defense. It is therefore generally inappropriate to grant Rule 12(b)(6) dismissal on the basis of an affirmative defense, unless the

complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Vasquez-Garcia*, 172 F.4th at 1157 (citations omitted). "Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Id.* (citation omitted).

**DISCUSSION**

Federal courts "apply the forum state's statute of limitations for personal injury actions to § 1983 claims." *Id.* at 1158. In New Mexico, such actions must be filed within three years of accrual, with an extension to the next business day for deadlines falling on a weekend. *See* N.M. Stat. Ann. §§ 37-1-8, 12-2A-7(F). Applying these provisions to Mr. Ayala's Sunday, February 4, 2024, filing date, his claims must have accrued on or after February 3, 2021.

As set forth below, the Court concludes that Mr. Ayala's Complaint was timely filed. His claims could not have accrued before February 3, 2021, as Defendants' deliberate indifference only became apparent after Mr. Ayala was finally hospitalized and properly diagnosed that afternoon. Alternatively, because Defendants' deliberate indifference extends to their misdiagnosis of him that morning, the continuing violations doctrine independently preserves his claims.

**I. Ordinary Accrual**

Accrual is a question of federal law and occurs once "the *facts* necessary for each element of the claim are known or reasonably knowable to the plaintiff," even if they "did not and could not know that a violation of the *law* has occurred." *Vasquez-Garcia*, 172 F.4th at 1158 (emphasis preserved). Still, "drawing the appropriate line" with respect to the necessary facts "can be difficult," so "[a]n accrual analysis begins with identifying the specific constitutional right alleged to have been infringed." *Id.* at 1158–59 (citation omitted). Here, Mr. Ayala brings an Eighth

Amendment deliberate indifference claim,[2] which accrued "when [he] knew or reasonably could have known that a) [his] injuries were objectively and sufficiently serious and b) the defendants acted with the requisite subjective state of mind, which is deliberate indifference." *Id.* at 1160.

Wexford argues that Mr. Ayala's claim accrued on January 26, 2021, at which point he knew that "he was sick and not getting better despite treatment." Doc. 26 at 3–4. To the same effect, NMCD Defendants argue that the claim accrued by February 2, when he had still not seen a physician despite reporting symptoms of endocarditis, meaning he "knew (allegedly) he had been denied critical care and knew that the (alleged) denial of care resulted in symptoms that clearly indicated a serious medical condition." Doc. 42 at 3. By contrast, Mr. Ayala argues that his claim only became apparent once he was transferred to the Guadalupe County Hospital emergency room and diagnosed with endocarditis on February 3. Doc. 41 at 4; Doc. 1 ¶ 34.

Defendants' arguments water down the second, subjective prong of Mr. Ayala's claim. Contrary to Wexford's contention, the mere fact that a patient is not improving does not put them on notice of deliberate indifference. Even the most attentive physicians frequently fail to curb aggressive ailments.[3] Indeed, the Court doubts that Wexford would welcome a rule under which every persistent cold exposes a healthcare provider to constitutional liability. Contrary to NMCD Defendants' contention, that a medical professional ought to have noticed that Mr. Ayala's symptoms indicated endocarditis does not mean a lay inmate ought to have noticed the same. To be sure, he noticed that his condition was deteriorating. But that alone does not suffice, unless "a

---

[2] Mr. Ayala also brings a policy or practice claim, Doc. 1 ¶¶ 130–143, which could not have accrued earlier than the deliberate indifference claim, as it additionally requires: "(1) an official policy or custom, (2) that caused the underlying injury, and (3) culpable state of mind." *Harden v. Hedgecock*, 181 F.4th 1094, 1101 (10th Cir. 2026). The timeliness of the deliberate indifference claim thus necessarily resolves the timeliness of the policy or practice claim.

[3] *See, e.g.*, David E. Wang et al., *Association of Rankings with Cardiovascular Outcomes at Top-Ranked Hospitals vs Nonranked Hospitals in the United States*, 3 JAMA Cardiol. 1222, 1222–24 (2018) (finding that even among the nation's top 10 ranked cardiology hospitals, 30-day mortality for acute myocardial infarction was 10.5%).

defendant did nothing at all in response to a risk of harm." *Vasquez-Garcia*, 172 F.4th at 1162 (distinguishing *Mata v. Saiz*, 427 F.3d 745, 754 (10th Cir. 2005)). Here, "the defendants did do things." *Id.* Wexford medical staff misdiagnosed him with a "drug induced fever," instructed him to consume more electrolytes, and gave him an antacid and aspirin. Doc. 1 ¶ 33. So assured, Mr. Ayala could reasonably have believed that he simply had to wait for the adverse drug interaction to run its course. In other words, the Court draws the reasonable inference in Mr. Ayala's favor that medical staff "did just enough to keep [him] unaware of their (alleged) deliberate indifference," until he was hospitalized and "the full picture came into view." *Vasquez-Garcia*, 172 F.4th at 1162. Therefore, Mr. Ayala's deliberate indifference claim accrued no earlier than his proper diagnosis at the Guadalupe County Hospital emergency room on the afternoon of February 3, 2021.

## II. The Continuing Violations Doctrine

The continuing violations doctrine "applies when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that *collectively constitute one unlawful act*," as opposed to the "continual ill effects" of a "discrete unlawful act." *Herrera v. City of Espanola*, 32 F.4th 980, 993 (10th Cir. 2022). To prevail at the pleadings stage, the plaintiff must allege a "continuous violation" with "unlawful acts or omissions reaching into the limitations period." *Vasquez-Garcia*, 172 F.4th at 1162.

Mr. Ayala's claim meets that standard. In *Vasquez-Garcia*, an inmate brought a deliberate indifference claim for inadequate treatment of several chronic conditions, including diabetes, asthma, and kidney disease. *Id.* at 1154–55. The Tenth Circuit found a continuing violation spanning over three years, reasoning that the claim was not predicated on a single failure, but on the "cumulative effect" of many failures. *Id.* at 1162–63. Mr. Ayala's endocarditis, though acute,

also presented an ongoing need for medical attention throughout his weeklong deterioration. And the "cumulative effect" of Defendants' repeated failures to provide such care likewise amounts to a single continuing violation. Because this alleged course of deliberate indifference extended through Wexford's misdiagnosis of him with a "drug induced fever," Mr. Ayala's claim accrued no earlier than the morning of February 3, 2021. *See* Doc. 1 ¶ 33.

**CONCLUSION**

Under ordinary accrual principles or the continuing violations doctrine, Mr. Ayala's claim accrued no earlier than February 3, 2021, rendering his February 4, 2024, Complaint timely. The Court thus declines to reach Plaintiff's alternative request for leave to amend, Doc. 23 at 5–6, Doc. 41 at 7, and denies Defendants' requests for attorneys' fees and costs, Doc. 21 at 7, Doc. 40 at 6.

**IT IS THEREFORE ORDERED** that Wexford Health Sources, Inc.'s Opposed Motion to Dismiss Based on the Statute of Limitations [Doc. 21] and NMCD Defendants' Motion to Dismiss Based on the Statute of Limitations and Supporting Memorandum [Doc. 40] are **DENIED**.

ENTERED this 12th day of November, 2026.

MARTHA VÁZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE